```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

ASHLEY DUNEVANT, et al.,            )
                                    )
            Plaintiffs,              )
                                    )
      v.                            )    No.  4:08CV702 FRB
                                    )
HEALTHCARE USA OF MISSOURI,         )
L.L.C.,                             )
                                    )
            Defendant.               )

### MEMORANDUM AND ORDER

Presently pending before the Court is plaintiffs' Motion to Remand (filed June 11, 2008/Docket No. 13). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

On April 1, 2008, plaintiff Ashley Dunevant, individually and as next friend to M.U., a minor, filed a class action lawsuit in the Circuit Court of the City of St. Louis, Missouri, against defendant Healthcare USA of Missouri, L.L.C. (Healthcare USA).[1] Defendant Healthcare USA is a private corporation and operates a health plan under "MC+ Managed Care," the State of Missouri's Medicaid program, pursuant to a contract entered into with the State. In her Petition, plaintiff claims that defendant Healthcare USA violated Missouri law when it unlawfully collected medical

---

[1] Although Ashley Dunevant fulfills the roles of multiple plaintiffs inasmuch as she brings this cause of action on behalf of herself, as next friend to a minor, and for all others similarly situated, the Court will refer to "plaintiff" in the singular form throughout the remainder of this Memorandum and Order.

liens from herself and others between 1995 and August 28, 2007, from personal injury settlement proceeds and/or damage awards paid by third parties to Medicaid recipients participating in the MC+ Managed Care program. In Count I of the Petition, plaintiff alleges that defendant's conduct in representing to plaintiff that it had valid liens against the settlement and/or judgment monies constituted fraudulent representation. In Count II, plaintiff alleges that defendant's conduct in supplying such false information constituted negligent representation. In Count III, plaintiff alleges that defendant's failure to follow state law regarding the collection of Medicaid liens constituted a breach of its contract with the State of Missouri, to which plaintiff is a third party beneficiary. Finally, in Counts IV and V, plaintiff alleges that defendant was unjustly enriched by the monies obtained through its unlawful collection of liens and wrongfully obtained benefit from retaining these unlawfully collected monies. Plaintiff bases the claims in her Petition on the pre-August 2007 version of Mo. Rev. Stat. § 208.215.

On May 15, 2008, defendant removed the cause to this Court pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. Plaintiff now seeks to remand the matter to state court, arguing that defendant fails to meet the criteria necessary to invoke this Court's jurisdiction under § 1442(a)(1). Defendant has responded to the motion to which plaintiff has replied. For the following reasons, plaintiff's Motion to Remand should be

granted, and the instant cause of action should be remanded to the Circuit Court of the City of St. Louis, Missouri, for all further proceedings.

A. <u>Federal Officer Removal Statute</u>

Under 28 U.S.C. § 1442(a)(1), a civil action commenced in a state court against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official or individual capacity for any act under color of such office," may be removed by them to the district court of the United States for the district and division embracing the place where it is pending. The federal officer removal statute is designed to protect officers of the federal government who, when acting pursuant to authority granted them under federal law, run afoul of the laws of a State. <u>Orthopedic Specialists of N.J. v. Horizon Blue Cross/Blue Shield of N.J.</u>, 518 F. Supp. 2d 128, 133 (D.N.J. 2007).

"[This] removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t]' and 'bring to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting . . . within the scope of their authority.'" <u>Watson v. Philip Morris Cos., Inc.</u>, ___ U.S. ___, 127 S. Ct. 2301, 2306 (2007) (quoting <u>Willingham v. Morgan</u>, 395 U.S. 402, 406 (1969)). "State-court proceedings may reflect local prejudice

against unpopular federal laws or federal officials." Id. (internal quotation marks and citations omitted). "And States may deprive federal officials of a federal forum in which to assert federal immunity defenses." Id. "Where a private person acts as an assistant to a federal official in helping that official to enforce federal law, some of these same considerations may apply." Id. at 2307.

For a private entity to invoke removal jurisdiction under 28 U.S.C. § 1442(a)(1), the removing party must satisfy four criteria: 1) it must be a person; 2) it must be acting under a federal officer or agency; 3) it must be sued for actions under color of such office; and 4) it must have a colorable federal defense. See Regional Med. Transp., Inc. v. Highmark, Inc., 541 F. Supp. 2d 718, 723 (E.D. Pa. 2008). Although this removal statute is to be liberally construed, Watson, 127 S. Ct. at 2304-05, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities. Orthopedic Specialists, 518 F. Supp. 2d at 133; Freiburg v. Swinerton & Walberg Prop. Servs., 245 F. Supp. 2d 1144, 1150, 1152 (D. Colo. 2002). If the right to remove is doubtful, the case should be remanded. Frieburg, 245 F. Supp. 2d at 1151.

In this cause, it is not disputed that defendant Healthcare USA is a "person" under the statute. See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007) (corporations are "persons" under § 1442(a)(1)). It

cannot be said, however, that the defendant here acted "under a federal officer or agency" such that its conduct brings it within the federal officer removal statute.

B. "Acting Under a Federal Officer or Agency"

The federal officer removal statute permits removal only if the defendant, in carrying out the acts that are the subject of the plaintiff's Petition, was "acting under" any "agency" or "officer" of "the United States." Watson, 127 S. Ct. at 2304. While the words "acting under" are to be applied broadly, they are not limitless. Id. at 2305.

For private persons, the statute applies to those "'who lawfully assist' the federal officer 'in performance of his official duty.'" Watson, 127 S. Ct. at 2307 (quoting Davis v. South Carolina, 107 U.S. 597, 600 (1883)). "[T]he statute authorize[s] removal by private parties 'only' if they were 'authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law.'" Id. (quoting City of Greenwood v. Peacock, 384 U.S. 808, 824 (1966)). Upon review of its relevant precedent and history of § 1442(a)(1)'s purpose, the Supreme Court in Watson observed it to be "clear that the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Id. (emphasis in original). "[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." Id. (emphasis in

original).

In this cause, defendant Healthcare USA was not "acting under" the auspices of any federal officer or agency when it collected medical liens from plaintiff and other Medicaid recipients prior to August 2007. Instead, Healthcare USA acted pursuant to a contract entered into with the State of Missouri by which it agreed to submit to rules and regulations set out by the State in its Medicaid plan, which in turn complied with rules and regulations of the federal Medicaid Act.

> Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals. Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services[.]

Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 501 (1990) (citing 42 U.S.C. § 1396).

The purpose of the Medicaid Act is to provide "federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297, 301 (1980).

The Medicaid Act requires those States participating in the Medicaid program to include various provisions in their State plans for medical assistance. 42 U.S.C. § 1396a(a). The Secretary of Health and Human Services is required to approve a State plan which fulfills the conditions specified in § 1396a(a). 42 U.S.C.

§ 1396a(b). Relevant to the instant cause of action is § 1396a(a)(25) which requires that a State plan for medical assistance must provide

> (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan . . . ;
>
> (B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the cost of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability;
>
> . . .
>
> (H) that to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services[.]

It is undisputed in this action that the State of Missouri participates in the Medicaid program under 42 U.S.C. §§ 1396, et seq. It is likewise undisputed that the State of Missouri entered into a contract with Healthcare USA whereby Healthcare USA agreed to "provide a managed care medical service delivery system for the Department of Social Services, Division of Medical Services

(. . . referred to as the 'state agency')[.]"  (See Petn., Attchmnt., Contract, Para. 2.1.1.)  Under paragraph 1.5.1 of the contract, it is agreed that in the State of Missouri, "the Department of Social Services, Division of Medical Services is officially designated with administration of the medical assistance and federal Medicaid [] programs."

Defendant argues that, through its contract with the State, it collected money pursuant to a federal statute on behalf of the federal government and therefore was "acting under" a federal officer, and specifically, the Secretary of Health and Human Services.  Citing Bushman v. Seiler, 755 F.2d 653 (8th Cir. 1985), and Slotten v. Hoffman, 999 F.2d 333 (8th Cir. 1993), defendant contends that the indirect nature of its conduct with the federal government does not alter the fact that it nevertheless was "acting under" the auspices of the Secretary.  Defendant's argument is misplaced.

In Seiler, the defendant was an employee of a Medicare carrier whose actions in question were performed pursuant to the Medicare Act.  The Eighth Circuit determined defendant's actions, albeit as an agent of the Medicare carrier, to nevertheless be indirectly linked with the federal government inasmuch as the Medicare carrier for which he worked was itself an agent of the Department of Health and Human Services.  Seiler, 755 F.2d at 655. Likewise, in Slotten, the defendant bank, Agribank, was a member of the National Farm Credit System, whose entities were considered to

be "'instrumentalities of the federal government, engaged in the performance of an important governmental function.'" Slotten, 999 F.2d at 335 (quoting Federal Land Bank v. Priddy, 295 U.S. 229, 231 (1935)). An amendment to the Farm Credit Act in 1985 created "Capital Corporation" and authorized it to enter into contracts with Farm Credit System entities in accordance with FCA regulations. Capital Corporation entered into such an agreement with Agribank which required Agribank to operate under Capital Corporation's oversight and supervision. In response to an unfavorable audit by the FCA and at the request of Capital Corporation, Agribank and its vice president, defendant Hoffman, subsequently provided employment information regarding plaintiff Slotten to Capital Corporation, which, when combined with other information, led to Slotten's dismissal from employment at Capital Corporation. The Eighth Circuit determined that the defendants' conduct in providing information regarding Slotten to Capital Corporation was protected by official immunity inasmuch as such disclosure was required and mandated under federal law. The Eighth Circuit found Agribank, as a member of the Farm Credit System and thus an instrumentality of the United States, to have a mandatory duty under the FCA regulations to supply information necessary to execute governmental functions. Id. at 335-37. Relying on the "indirect link" determination in Seiler, the court of appeals in Slotten determined the information revealed by Hoffman was in furtherance of the obligations imposed on Agribank and authorized

by the FCA, and thus was protected by official immunity inasmuch as Agribank was an instrumentality of the United States. Id. at 336-37.

Defendant argues that the same indirect link the Eighth Circuit found in Seiler and Slotten exists here inasmuch as Healthcare USA acted as an agent of the State in its Medicaid plan, and that by virtue of participating in the federal Medicaid program, the State acts as an agent of the federal government. The undersigned disagrees.

First, in Seiler, the matter at issue involved conduct occurring under the Medicare Act, a federal program administered and funded entirely by the federal government. Rehabilitation Ass'n of Va., Inc. v. Kozlowski, 42 F.3d 1444, 1446 (4th Cir. 1994); Pennsylvania Med. Soc'y v. Snider, 29 F.3d 886, 888 (3d Cir. 1994); Minnesota ex rel. Hatch v. United States, 102 F. Supp. 2d 1115, 1122 (D. Minn. 2000). As such, in actions against a Medicare carrier, the United States is the real party in interest inasmuch as any recovery would come from the federal treasury. Anderson v. Occidental Life Ins. Co. of Cal., 727 F.2d 855 (9th Cir. 1984) (cited approvingly in Seiler, 755 F.2d at 655). The defendant in Seiler acted entirely within the framework of a federal program, Medicare, pursuant to the directives and mandates of a federal officer or agency. The issue in the instant cause of action involves a State's Medicaid program, which, unlike Medicare, is a voluntary program implemented and managed by the State and is

funded by both state and federal monies.  Rehabilitation Ass'n, 42 F.3d at 1447; Pennsylvania Med. Soc'y, 29 F.3d at 888.  Although the State plans must comply with federal rules and regulations to receive federal funds, such compliance itself does not convert a State Medicaid program into a federal program directed and managed by the federal government.

Nevertheless, relying on the "indirect link" language of Seiler and Slotten, the defendant urges this Court to determine that the State of Missouri's compliance with the rules and regulations of the Medicaid Act serves to make the State an "agent" of the federal government; and thus by virtue of its contract with the State, Healthcare USA, as an agent of the State, is likewise an agent of the federal government, albeit indirectly.  The undersigned declines to do so.  "[A]ny expansion of the idea that an individual State can be thought to act as an agent of the national government in a particular context must be discouraged in fidelity to the basic conception of federalism expressed in the Constitution."  Commonwealth of Mass. v. Philip Morris Inc., 942 F. Supp. 690, 698 (D. Mass. 1996) (citing New York v. United States, 505 U.S. 144 (1992)).

A reading of the contract at issue here in its entirety shows that the duty of managing and overseeing Healthcare USA's conduct under the contract lies with the *state* agency, not a federal instrumentality or a federally-created entity.  To the extent the contract requires defendant to comply with federal

regulations, and specifically those regulations imposed upon a state agency in seeking reimbursement for third party liability (see Contract, para. 2.22.2(e), 42 C.F.R. § 433.139(b)-(f)), the mere existence of and/or compliance with federal regulations does not bring a removing private party within the federal officer removal statute. Watson, 127 S. Ct. at 2308.[2] That is so even if the regulations are highly detailed and even if the private firm's activities are highly supervised and monitored. Id.

Nevertheless, as noted above, the contract provides for Healthcare USA's activities to be highly supervised and monitored by an agency of the State of Missouri. Under the contract, the state agency is charged with the duty to determine if a health plan fails to perform administrative services, which, by definition, includes the recovery of third party reimbursement. Contract, Para. 2.28.4. When the state agency makes such a determination, procedures are provided by the agency for the health plan to remedy its failure. If the health plan fails to comply with these procedures, the *state* agency withholds payment from the next

---

[2]The regulations set out at 42 C.F.R. § 433.139(b)-(f) provide the process by which a state agency is to determine the existence of third party liability and the manner by which reimbursement is to be pursued. The contract here requires Healthcare USA to comply with the terms of these regulations. The undersigned notes that 42 C.F.R. § 433.139(a), which is *not* applicable to Healthcare USA under the contract, requires state agencies to submit to the Centers for Medicare and Medicaid Services (CMS) documentation of the methods used for payment of claims involving third party liability. Under the contract, Healthcare USA is to submit *its* documentation of such conduct to the state agency. See Contract at Para. 2.20.5.

capitation payment due the health plan.  Id.  Under the contract, the state agency also has available to it the right to implement any other legal processes deemed necessary including cancellation of the contract, recovery of damages, and suspension of enrollment to the health plan.  Contract, Para. 2.28.8.  None of these duties fall to the federal government, either by contract or otherwise.

The Supreme Court has recognized, however, that where a private contractor's assistance provided to federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks, such contractor "acts under" the federal official.  See Watson, 127 S. Ct. at 2308.  The Court observed that in such circumstances, the federal government itself would have to perform the task in the absence of such assistance from the private contractor.  Id.  The Supreme Court further noted, however, that "neither Congress nor federal agencies normally delegate legal authority to private entities without saying that they are doing so."  Id. at 2310.

Here, as a condition to its voluntary participation in the federal Medicaid program, the State of Missouri was required to include in its plan provisions for the recovery and reimbursement of payments made where third party liability exists.  42 U.S.C. § 1396a(a)(25).  The plain language of the Medicaid Act shows any duty with respect to such recovery and reimbursement to lie with the States.  With respect to third party recovery, the contract here between the State of Missouri and Healthcare USA provides that

"[i]f a member initiates a legal action as a result of an injury that occurred during the health plan contract period, the health plan [Healthcare USA] may file a lien for reimbursement for medical services provided to treat the injury that occurred during the contract period[.]" Contract, Para. 2.22.2(e). Neither a review of 42 U.S.C. §§ 1396, et seq., or of the contract shows that in the event Healthcare USA fails to assist in seeking and collecting reimbursement for third party liability, the Secretary of Health and Human Services would have to step in and perform that task. Indeed, a review of the contract shows the only direct involvement by the federal government in the event of Healthcare USA's failure to act under the contract would be to deny federal Medicaid payments to Healthcare USA in the event Healthcare USA engaged in:

> a. Substantial failure to provide required medically necessary items or services when the failure had adversely affected (or has substantial likelihood of adversely affecting) a member,
>
> b. Imposition of premiums on members in excess of permitted premiums . . . ,
>
> c. Discrimination among members with respect to enrollment, re-enrollment, or disenrollment on the basis of the member's health status or requirements for health care services,
>
> d. Misrepresentation or falsification of certain information, or
>
> e. Failure to comply with the requirements for physician incentive plans as specified herein.

Contract, Para. 2.28.2.

None of these conditions involve the failure to seek recovery or reimbursement for third party liability. Instead, as noted above, in the event Healthcare USA fails to perform its administrative obligation under the contract in seeking and collecting reimbursement for third party liability, the responsibility for remedying such failure rests with the state agency. Contract, Para. 2.28. This is consistent with 42 U.S.C. § 1396a(a)(25) which imposes this duty to recover and collect upon the States and not upon any federal officer or agency.

In her Petition, plaintiff claims that defendant's conduct in collecting medical liens ran afoul of the pre-August 2007 version of that portion of the State of Missouri's Medicaid plan governing reimbursement for third party liability. While defendant asserts that the Medicaid Act provided it the authority to conduct such action, it has not demonstrated that its acts were performed pursuant to the direct and detailed control of an officer of the United States. Orthopedic Specialists, 518 F. Supp. 2d at 134. Inasmuch as defendant has not shown that it was acting under a federal officer or agency when it obtained and collected from plaintiff and other Medicaid recipients medical liens against recoveries from third parties, its removal of the instant cause of action to this Court under the federal officer removal statute was improper.[3]

---

[3]This determination is consistent with the recognition of other courts that private providers of Medicaid services derive their obligations from state law and through their contractual

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion to Remand (Docket No. 13) is granted.

**IT IS FURTHER ORDERED** that defendant's Motion to Dismiss (Docket No. 6) is denied without prejudice to be refiled in state court if appropriate.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Stay (Docket No. 15) is denied as moot.

**IT IS FURTHER ORDERED** that defendant's Motion for Oral Argument on Motion to Remand (Docket No. 20) is denied.

**IT IS FURTHER ORDERED** that this cause shall be and is remanded to the Circuit Court of the City of St. Louis, Missouri, for all further proceedings.

_/s/ Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this  _27th_  day of August, 2008.

---

agreements with the States, not from the Medicaid Act. See, e.g., Stewart v. Bernstein, 769 F.2d 1088, 1094 (5th Cir. 1985) (citing O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 787, 787 n.20 (1980)).